IN RE APPLICATION FOR REMOVAL OF W. H. CHERRY
AS AN ATTORNEY AT LAW IN THE STATE OF
MINNESOTA.[1]

April 1, 1926.

No. 24,807.

**Disbarment of attorney.**

Section 5697, G. S. 1923, preventing proceeding to disbar an attorney unless begun within two years from commission of offense or misconduct complained of, does not apply where attorney collected money in 1919 and frequent efforts to obtain some part of it brought nothing but repeated promises of payment—Accused's misconduct in reference to matter had been continuous up to time of prosecution. [Reporter]

Attorney and Client 6 C. J. p. 591 n. 69; p. 601 n. 87 New.

---

See note in 19 L. R. A. (N. S.) 414; 2 R. C. L. p. 1095; 1 R. C. L. Supp. p. 701; 5 R. C. L. Supp. p. 125.

[1]Reported in 208 N. W. 197.

The state bar association accused W. H. Cherry of Morris, in Stearns county, of wilfully violating his oath of office and of deceit, fraud and wilful misconduct in his profession. Judgment of disbarment ordered.

*James B. Ormond,* for accused.

*H. G. Cant,* for respondent.

### PER CURIAM.

This is a proceeding brought by the State Board of Law Examiners to remove W. H. Cherry from his office of an attorney at law for wilful misconduct in his profession. He resides at Morris in Stevens county. The petition and the amendments thereto make several specific charges of the same general character. We deem it unnecessary to set them forth in detail. In substance they are to the following effect: That the accussed collected money for clients and failed to account for it; that after collecting money for nonresident clients he not only failed to remit, but made no answer to numerous and insistent letters, some asking him to remit, some asking an explanation of his conduct; and that, in several instances where clients or other attorneys employed by them were pressing for money which they knew he had collected, he sent them checks which the bank returned unpaid because he had no funds therein. The undisputed evidence amply sustains the charges and they are found to be true.

G. S. 1923, § 5697, provides that no proceeding for the removal of an attorney at law "shall be instituted unless commenced within the period of two years from the date of the commission of the offense or misconduct complained of, or within one year after the discovery thereof."

It is urged that consideration of the first and second charges set forth in the petition is barred by this statute. We cannot so hold.

The first charge involves the conduct of Cherry as attorney for John Tomick, for whom he brought an action to recover the sum of $457 for work performed in the construction of a road in Stevens county. This action was settled for the sum of $300 which was paid to Cherry in February or March, 1919. In the meantime

Tomick had removed to the vicinity of Moose Lake, Minnesota. He employed Dodge & Blacklock, a firm of attorneys at Moose Lake, to collect the money from Cherry. They wrote Cherry August 9, 1919, asking if Tomick's claim that he had never received any of the money was true. Cherry replied on August 28. His letter is not in the record, but apparently claimed that one Mishow was entitled to a part of the money and that a release from both Mishow and Tomick was necessary to obtain it. Dodge & Blacklock wrote him on September 9, 1919, inclosing a copy of an order from Mishow to pay Tomick $457 for work performed on the road, and saying that Tomick "is willing to take the $300 in settlement which you say that you can obtain for him upon getting a release from Mishow and Tomick of their claim against the security company."

They asked if a release executed by Tomick with the order attached would not be sufficient. At the hearing Cherry admitted that he had received the $300 from the contractor in February, 1919, so that he in fact had no excuse for failing to account for it. Dodge & Blacklock received no reply to the above letter. Thereafter they wrote Cherry on the following dates without receiving any replies: October 9, 1919; November 12, 1919; December 4, 1919; November 20, 1920; December 14, 1920; December 29, 1920 and January 10, 1921. On January 25, 1921, they wrote him again, saying they were unable to get a reply even after sending return postage. He returned this letter with the following written at the bottom:

"Gentlemen: I will make a supreme effort to have this cleaned up for you in about ten days. There are reasons that lead me to believe that it can be closed up within that time.

"Very truly yours,

W. H. Cherry."

Thereafter, beginning with April 14, 1921, Dodge & Blacklock wrote Cherry repeatedly without getting any reply. They finally brought suit and on October 2, 1922, obtained a judgment against him in favor of Tomick for the sum of 377.35. On July 31, 1923, they wrote Cherry saying that their letters had brought no results,

and that unless the judgment was paid within ten days they would write a complete statement of the case and send one copy to the district judge and another to the State Board of Law Examiners. Cherry replied to this letter on August 6, 1923, saying among other things:

"It is impossible for me to send you the money just at this mom-. ent, as I have not got it, but I assure you I will be able to get it squared away soon * * * If, when you get this letter, you will write me stating that you are willing to allow me some time to get squared away, I will try and make a partial remittance."

He also asked if he could not have some reduction for the work he had done in the case. On August 9, 1923, Dodge & Blacklock wrote asking him for a definite statement of the amount and time of the proposed payments, and saying that they did not consider him entitled to any allowance for attorney's fees in view of the manner in which he had handled the matter. Cherry replied August 16, 1923. After referring to his understanding with Mishow and Tomick he wrote:

"I will send you one hundred dollars within a few days, and the others I will send to you at $100 a month if that will be satisfactory until it is paid."

He also added that he thought he ought to have an allowance "at least of the interest on the judgment."

On August 18, 1923, Dodge & Blacklock wrote that they would waive the interest if he made the payments as stated and made the first within a week. On August 27, 1923, Cherry wrote:

"I enclose herein check payable to your order for $50. I will mail you the other check for a like amount this week. I have been disappointed in some remittances that I expected."

Dodge & Blacklock mailed the check to the bank which returned it with the statement:

"There are no funds at this bank to pay the enclosed check. We suggest that you send it here for collection."

They did so on September 14, 1923, and on the same date wrote Cherry a caustic letter. He wrote back that the failure to pay the check was a mistake, that the bank was sending a draft for the amount, and that he would send the other $50 October 1. On October 6, 1923, they wrote him that the $50 to be sent October 1 had not been received, and to send a cashier's check so that he would be sure that the bank made no more mistakes. Receiving no answer they wrote again on October 26. On November 10, 1923, Cherry wrote: "I will mail you remittance the first of the week." On November 23, 1923, Cherry sent a check for $25, and wrote: "I will try and make up what I agreed to pay now by the first of the week."

Dodge & Blacklock wrote repeatedly during 1924, but failed to obtain any further payments, and in April, 1925, placed the matter before the Board of Law Examiners. On April 29, 1925, Cherry wrote Dodge & Blacklock that he had received notice from the Secretary of the Board of Law Examiners that complaint had been made against him concerning the Tomick matter and saying:

"I should have written you and sent you some money but circumstances over which I had no control intervened."

He said he could pay $25 in cash and would pay a like amount each month and asked if that would be satisfactory. Apparently no reply was made to this letter, and no further payments have ever been made.

The facts relating to this charge are undisputed. We have recited them in some detail to show our reason for saying that the charge is not barred by the statute of limitations quoted, although the money for which the accused failed to account was received by him in February, 1919. His misconduct in respect to the matter began then and has been continuous down to the present time. The statute does not apply and cannot have been intended to apply to such a situation. For the same reason prosecution upon the second charge is not barred by the statute, although the funds involved were received by the accused more than two years before this proceeding was initiated.

It is ordered that W. H. Cherry be and he hereby is removed from his office of an attorney at law in this state, and it is further ordered that a formal judgment of disbarment be entered.

Stone, J. took no part.